## Liquor Control Board *v.* Rauwolf.

Argued March 3, 1971, before President Judge BowMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Albert B. Miller,* Special Assistant Attorney General, with him *Thomas J. Shannon,* Assistant Attorney General, and *Fred Speaker,* Attorney General, for appellant.

*Abraham J. Levinson,* with him *Hillel S. Levinson,* for appellee.

OPINION BY JUDGE MANDERINO, September 3, 1971:

The facts in this case were stipulated and are not in dispute. The Pennsylvania Liquor Control Board issued an order granting the transfer of a restaurant liquor license (No. R18410) upon a prior approval basis to John Rauwolf for premises located at 2 Old York Road in Upper Moreland Township. Rauwolf then undertook to secure the building and zoning permits required for the necessary alterations and repairs. After he was unable to secure the permits, Rauwolf appealed to the Court of Common Pleas of Montgomery County which sustained the action of the Zoning Board of Adjustment in refusing Rauwolf the zoning permits. Because Rauwolf was not able to secure the required permits, he could not proceed with the alterations and repairs. Under an amended order of the Liquor Control Board, Rauwolf was to complete the alterations and repairs to the premises on or before January 31, 1970. Almost six months before the deadline, Rauwolf entered into an agreement for the sale and transfer of his license to Restaurant Systems, Inc., for use at a new location at 517-19 Old York Road.

On September 12, 1969, almost four months before Rauwolf's deadline involving the premises at 2 York Road, the Board refused to approve the transfer of the license to Restaurant Systems, Inc., for use at 517-19 Old York Road.

The Board did not find any lack of diligence on the part of Rauwolf or any negligence in his failure to make the alterations and repairs on the premises at 2 Old York Road. The sole reason why the Board refused to allow Rauwolf to transfer his license to a new owner for use at different premises was because the

Board felt that it was not authorized to approve such transfer under Section 403(a) of the Liquor Code. (Act of April 12, 1951, P. L. 90, as amended by the Act of November 19, 1959, P. L. 1546, §1, 47 P.S. 4-403(a).

After the Board's refusal to approve the requested transfer, the Board also refused to renew on December 2, 1969 Rauwolf's license because he had not completed the alterations and repairs at the premises located at 2 Old York Road, even though it was impossible for Rauwolf to alter and repair the premises since he was not able to secure the necessary permits.

The lower court held that the Board improperly refused Rauwolf's request for a transfer of his license to Restaurant Systems, Inc., for use at premises located at 517-19 Old York Road and also improperly refused to renew Rauwolf's license following the Board's disapproval of his requested transfer. We agree with the lower court that the Board did have authority to approve the transfer of Rauwolf's license to a new owner at a new location. Section 468 of the Liquor Code (47 P.S. 4-468) provides that: "The board, upon payment of the transfer filing fee and the execution of a new bond, is hereby authorized to transfer any license issued by it under the provisions of this article from one person to another or from one place to another, or both, within the same municipality as the board may determine."

The above Section contains no restriction on the Board's authority to approve the transfer of a license to a new owner at a new location.

The Board concluded, however, that its broad authority under the above section was restricted in this case because of Section 403(a) of the Liquor Code. The Board interpreted that section as prohibiting the transfer of Rauwolf's license to a new owner at a new location. The pertinent language of 403(a), which led the

Liquor Control Board to conclude that no transfer was possible, is as follows: "No such license shall be transferable between the time of issuance or transfer of the license and the approval of the completed alterations or construction by the Board and full compliance by the licensee with the requirements of this act, except in the case of death of the licensee. . . ."

Section 403 (a) is the result of an amendment to the Liquor Code passed in 1959. Prior to this amendment, it was necessary before the issuance of a license or the transfer of a license for the owner to physically complete the proposed place of business where the license would be used. Applicants were required to spend money, time and effort to comply with statutory requirements concerning the physical premises, without any guarantee that after the premises were complete, a license would be issued. The Board admits that the amendment was passed so that an individual could obtain a prior approval (in effect a conditional approval) before proceeding with the preparation of the premises where the license would be used. The individual thus had a prior guarantee that the license would be issued or transferred after the premises were completed in accordance with statutory requirements covering the physical premises.

The pertinent language of Section 403 (a), quoted above, which the Board believes forbids a transfer of a prior approval license, does appear to prohibit a transfer when an applicant who has been granted a prior approval transfer desires to transfer his license to another individual who would then have the burden of completing the alterations and repairs at the location previously approved by the Board. The Board having approved a transfer for one owner does not have to allow a transfer to another owner while the alterations and repairs are underway at the approved location.

Section 403(a), however, does not say that plans for a proposed new location cannot be revoked or abandoned by the owner of the license and a new request submitted for a new location. To read Section 403(a) in such a manner would be to build in an inflexible and highly restrictive provision which would result in serious injustice in a case such as the one before us. Rauwolf tried to get permission to alter and repair the premises at 2 Old York Road, but could not do so. It was impossible for Rauwolf to complete his original plans.

Section 403(a) prohibits the transfer of a license to a new owner or a new location, at any time during the interval between *two specified events*. The *first event* is the Board's prior approval of a transfer to a particular location and the *second event* is the completion of the alterations or construction at the approved new location. Section 403(a) assumes that the two events are going to happen and that an owner wishes to transfer a license to a new owner between the two events. If the *second event,* mainly the completion of alterations or construction at the approved location is impossible or has been abandoned by the owner, Section 403(a) does not apply.

To give any other interpretation to Section 403(a) would mean that a holder of a license who obtained a prior approval of a transfer to a new location would be forever bound from the date of the approval of the transfer to the new location, and could never, for any reason, change his plans. The owner of the license would be faced with the same risks present before Section 403(a) was put into the Liquor Code in 1959. Yet the very purpose of 403(a) according to the Board, was to alleviate the situation which existed whereby an owner had to complete the work at the new location before the transfer would be approved. This is so because an

owner can never be sure of being able to complete alterations and repairs at a new location until he has expended money, time and effort not only for alterations and repairs, but for the obtaining of necessary permits under zoning or other local codes. Other happenings such as a fire could also prevent preparation of the premises.

After Rauwolf got an approval of his new location, he tried very seriously to prepare the premises by obtaining the necessary permits, but was not able to do so. Six months before the date when the new premises were to be ready, Rauwolf, obviously seeing the impossibility of qualifying the new premises, decided to sell his license to a new owner for use at a new location. The Board was not asked to transfer a license to a new owner, who would then in turn accept the responsibility of completing the work that Rauwolf had begun.

Section 403(a) was not applicable to the situation before the Board and the Board had full authority under Section 4-468 of the Liquor Code (47 P.S. 4-468) to approve Rauwolf's request for a transfer to a new owner for use at a new location.

Section 52 of the Statutory Construction Act (Act of May 28, 1937, P. L. 1019; 46 P.S. 552) states that: "The legislature does not intend a result that is absurd, impossible of execution or unreasonable."

To interpret Section 403(a) as prohibiting the Board from approving Rauwolf's transfer, would certainly be an absurd or unreasonable result. It would mean that the whole purpose of obtaining prior approval could be frustrated so far as an owner is concerned. In this case, Rauwolf was confronted with a situation which prevented the completion of his original plan and he may not now be precluded from further activity with regard to his license.

The Board's failure to renew Rauwolf's license after it had refused to allow a transfer to a new owner at a

new location was also in error. Section 470 of the Liquor Code (47 P.S. 4-470) provides that the license shall be renewed unless the Board gives ten days notice. Here no such notice was ever given to Rauwolf. Having failed to follow the explicit section of the Liquor Code providing procedure for revocation, the Board's act in failing to renew Rauwolf's license was clearly in error.

The decision of the Court of Common Pleas of Montgomery County is affirmed.